Filed 4/30/26  Chelico v. Rolex Watch U.S.A. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| BASSAM SAMIH CHELICO, | B345838 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 24STCV04771) |
| v. | |
| ROLEX WATCH U.S.A., INC., et al., | |
| Defendants and Respondents. | |

APPEAL from the judgment of the Superior Court of Los Angeles County, Alison M. Mackenzie, Judge.  Affirmed.

Law Office of Nabil E. Chelico and Nabil E. Chelico for Plaintiff and Appellant.

Fisher & Phillips, Colin P. Calvert, Aalia Taufiq and Danielle S. Zobel for Defendants and Respondents.

_____

Bassam Samih Chelico filed a lawsuit against Rolex Watch U.S.A., Inc. (Rolex) and Tyler Meine, a Rolex officer, alleging they violated Civil Code section 52.1[1] by destroying Rolex records, which caused his claims in a separate action against a third party to fail. The trial court sustained defendants' demurrer without leave to amend. We affirm.

## BACKGROUND

We assume the truth of all material facts properly pleaded in the complaint but not the complaint's contentions, deductions, or conclusions of fact or law. (*Association for Los Angeles Deputy Sheriffs v. County of Los Angeles* (2023) 94 Cal.App.5th 764, 802.)

JB Gearys, LLC (Gearys) employed Chelico as a sales consultant at its luxury watch boutique in Century City. He was an exemplary employee. Meine, a Rolex employee, oversaw a program whereby individuals posing as customers would surreptitiously evaluate Gearys employees' sales performance and compliance with Rolex protocols. Chelico consistently performed well in these evaluations. Rolex retained records of the feedback.

After Gearys terminated Chelico's employment "under a pretext," he sued Gearys for ethnicity and age-based discrimination. The superior court ordered the matter to arbitration, which ended in Gearys's favor. The court confirmed the resulting award and entered judgment accordingly, which our colleagues in Division Seven affirmed. (*Chelico v. TJB Gearys, LLC* (Dec. 15, 2025, B331570) [nonpub. opn.], opn. mod. Jan. 13, 2026.)

In the instant lawsuit, Chelico asserts causes of action for violation of section 52.1 and "conspiracy." After the trial court sustained defendants' demurrer to the first amended complaint, the

---

[1] Unless otherwise specified, all statutory references are to the Civil Code.

second amended complaint became the operative complaint.  In it, Chelico alleged that Meine conspired with Rolex, a New York corporation, to destroy records of Rolex's evaluation program, including records relating to Chelico.  Chelico alleged defendants destroyed these records to "intimidate and coerce [his] efforts to vindicate his . . . rights" against Gearys and "intimidate his ability to pursue his" rights, which caused his claims against Gearys to fail.  He alleged "[d]efendants intended for their actions to hurdle [his] ability [to pursue] his statutory rights."

Concluding that spoliation of evidence does not constitute coercion or intimidation for purposes of section 52.1, the trial court sustained defendants' demurrer without leave to amend.

Chelico appealed from the resulting judgment of dismissal.

## DISCUSSION

Chelico contends he adequately alleged that defendants' destruction of records relating to Rolex's evaluations was a form of intimidation and coercion for purposes of section 52.1.  We disagree.

On review of a trial court's order sustaining a demurrer, we examine the complaint de novo.  (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415.)  "We give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.  [Citation.]  Further, we treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law.  [Citations.]  When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action.  [Citation.]  And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has abused its

discretion and we reverse." (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865.)

Section 52.1, known as the Tom Bane Civil Rights Act, provides that a person may bring legal action against anyone, whether or not acting under color of law, who by "threat, intimidation, or coercion," interferes with or attempts to interfere with a plaintiff's exercise or enjoyment of rights that are enshrined under the Constitution of the United States or the Constitution or laws of this state. (§ 52.1, subd. (b); *Venegas v. County of Los Angeles* (2004) 32 Cal.4th 820, 841 [Tom Bane Civil Rights Act prohibits interference or attempted interference with the plaintiff's legal rights through threats, intimidation or coercion].)

Our fundamental task in interpreting a statute such as section 52.1 is to ascertain the Legislature's intent and effectuate the law's purpose. "The statutory language itself is the most reliable indicator, so we start with the statute's words, assigning them their usual and ordinary meanings, and construing them in context. If the words themselves are not ambiguous, we presume the Legislature meant what it said, and the statute's plain meaning governs." (*Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1190.)

Neither the Civil Code nor case law defines what the Legislature intended "intimidation" or "coercion" to mean in section 52.1. Black's Law Dictionary defines "intimidation" as "[u]nlawful coercion; extortion." (Black's Law Dict. (12th ed. 2024).) It defines "coercion" as the "[c]ompulsion of a free agent by physical, moral, or economic force or threat of physical force" or "the improper use of economic power to compel another to submit to the wishes of one who wields it." (*Ibid.*)

Coercion and intimidation are thus conduct designed to compel a person to take or refrain from an action.

Here, Chelico does not allege defendants deleted their records to compel him to take or refrain from any action, for example to drop his claims against Gearys. Instead, he alleges that defendants intimidated and coerced his "efforts to vindicate his . . . rights" and his "ability to pursue his . . . rights."

At best, Chelico alleges defendants deleted records to interfere with his claims against Gearys. But in their usual and ordinary meanings, "coercion" and "intimidation" are not synonyms for "interference." We therefore conclude the Legislature did not intend for section 52.1 to afford a remedy for interference with a legal claim. Defendants' demurrer to Chelico's cause of action for violation of section 52.1 was therefore properly sustained. Because Chelico concedes that his cause of action for conspiracy relies on his claim for violation of section 52.1, defendants' demurrer to it was properly sustained as well.

Relying on *Hardeman v. Thomas* (1989) 208 Cal.App.3d 153, Chelico argues that "intimidation is a question of fact to be decided by the jury." Although it is true that "whether or not a [person] is subject to intimidation is a question of fact, left to the trier of fact" (*id*. at p. 170), whether the Legislature intended the terms "intimidation" and "coercion" to mean interference with legal claims is a matter of statutory construction for the courts. No principle or, to our knowledge, authority supports that the Legislature intended the Tom Bane Civil Rights Act to provide remedies for spoliation of evidence.

Chelico argues *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028 held that falsification of employment information can be a form of intimidation. *Yanowitz* contained no such holding. In any case, Chelico did not allege that defendants destroyed Rolex records to intimidate him.

5

Identifying no new facts he could allege to amend the complaint successfully, Chelico argues for the first time on appeal that he should be granted leave to amend to assert a cause of action under Business and Professions Code section 17200 (the Unfair Competition Law or UCL) premised on defendants' violation of Corporations Code section 28802 and their otherwise unfair and fraudulent practices.

The UCL prohibits, and provides civil remedies for, unfair competition. (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 320.) "[U]nfair competition" includes "any unlawful, unfair or fraudulent business act or practice." (Bus. & Prof. Code, § 17200.) Consequently, there are three varieties of unfair competition. (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180.) By prescribing " 'any unlawful' " business practice, the UCL borrows violations of other laws and treats them as unlawful practices that the UCL makes independently actionable. (*Ibid*.) Actions for relief pursuant to the UCL may be prosecuted "by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." (Bus. & Prof. Code, § 17204.)

Corporations Code section 28802 is part of the Capital Access Company Law, Corporations Code section 28000 et seq., which regulates California companies that provide financing and managerial assistance to California small businesses. (Corp. Code, § 28004, subd. (a).) Corporations Code section 28802 makes it unlawful to destroy the records of a "licensee" with intent to deceive specified individuals or agencies. (Corp. Code, § 28802.) A "licensee" for the purposes of this section is a company organized under the laws of the State of California and licensed under the Capital Access Company Law. (Corp. Code, §§ 28034, 28039.) Because, as Chelico acknowledges, Rolex is not organized under

6

the laws of the State of California, destruction of its records does not violate Corporations Code section 28802, and thus no UCL claim could be predicated on that statute.

As Chelico failed both below and on appeal to identify facts he could allege to amend the complaint successfully, the trial court's order denying leave to amend is affirmed.

## DISPOSITION

The judgment is affirmed.  Respondents are awarded their costs on appeal.

NOT TO BE PUBLISHED.


ROTHSCHILD, P. J.

We concur:



BENDIX, J.



M. KIM, J.

7